IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 13, 2013

## OTIS MACLIN v. STATE OF TENNESSEE

**Appeal from the Criminal Court of Davidson County**
**No. 2009-B-1361    Monte Watkins, Judge**

---

**No. M2012-01238-CCA-R3-PC - Filed February 22, 2013**

---

Otis Maclin ("the Petitioner") filed a petition for post-conviction relief from his convictions based upon guilty pleas to the offenses of kidnapping, sexual battery, and aggravated assault. In accordance with the plea agreement, the Petitioner received an effective ten-year sentence. In his petition, he argued that he was denied effective assistance of counsel in conjunction with his guilty plea and that his plea was constitutionally infirm. After an evidentiary hearing, the post-conviction court denied relief, and this appeal followed. Upon our thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Ashley Preston, Nashville, Tennessee, for the appellant, Otis Maclin.

Robert E. Cooper, Jr., Attorney General & Reporter; Leslie E. Price, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Hugh Ammerman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

The Defendant was indicted in May 2009 for especially aggravated kidnapping, aggravated sexual battery, and aggravated assault. On August 13, 2009, the Defendant pleaded guilty to kidnapping, sexual battery, and aggravated assault. Pursuant to the plea agreement, the trial court sentenced the Defendant as a Range I, standard offender to five

years for the kidnapping conviction, one year for the sexual battery conviction, and four years for the aggravated assault conviction, to be served consecutively, for an effective sentence of ten years.

*Guilty Plea*

At the guilty plea hearing, the State recited the factual basis for the Petitioner's plea as follows:

> [O]n January the 31st, 2009 the victim, . . . and the [Petitioner] . . . – a couple who formerly had a dating relationship – picked up a Mr. Ricky Butler from his residence at 2931 Glenmeade and the three of them went out. When they returned to Mr. Butler's residence the victim went into a rear bedroom and sat down on the bed completely clothed. [The Petitioner] followed, undressed himself and demanded oral sex. The victim refused. She was pushed back by the [Petitioner] who climbed on top of her and forced his lower body between her legs. She demanded that he stop. He hit her twice in the face with a closed fist. And then he hit her in the face with a drinking glass hard enough to shatter the glass as she tried to escape. This caused very severe lacerations on her face and required fifty sti[t]ches. He then pulled a knife and threatened her life. She screamed for help and Mr. Ricky Butler came to investigate. Mr. Butler stepped in between the two. The [Petitioner] dropped the knife, got dressed and left. The victim was taken by ambulance to Summit Hospital where she was treated for her injuries.

The trial court asked the Petitioner whether those facts were basically true, to which he responded, "No, Sir. . . . Wasn't no knife involved. I didn't just walk to her with a glass and hit her with no glass. She was striking me." The trial court stated, "I asked were those facts basically true. I didn't' say . . . were they absolutely true." The Defendant replied that they were. The trial court then asked the Petitioner, "[W]hat is your plea in Count One," to which the Petitioner replied, "I'm not guilty of no kidnapping." The trial court asked the Petitioner, "Do you want to do this plea or do you want to go to trial?" The Petitioner stated, "I'm pleading guilty."

The Petitioner confirmed at the plea hearing that he had been able to communicate with his appointed counsel ("Trial Counsel") and that he was satisfied with Trial Counsel's representation. He agreed that he understood the indicted charges and that the range of punishment for each of those charges was explained to him. He also agreed that he understood the convictions for which he was pleading guilty and their respective sentences, as well as the fact that the sentences would run consecutively, for a total effective sentence

-2-

of ten years. The Petitioner stated that Trial Counsel reviewed the plea agreement with him and that he understood the contents of the plea agreement. The Petitioner acknowledged that he understood that he was waiving his right to a trial by jury where he could present a defense and cross-examine the State's witnesses; his right to have an attorney represent him at trial; and his right to appeal the jury verdict if convicted. He agreed that he currently was not under the influence of drugs or alcohol and that he was not suffering from a mental illness; that he was entering into his plea freely and voluntarily; that no additional promises were made in the formation of the plea agreement; and that no one was forcing him to enter into his plea.

The trial court accepted the Petitioner's guilty plea and entered the judgments against the Petitioner, sentencing the Petitioner to ten years' incarceration.

*Post-Conviction*

The Petitioner subsequently filed for post-conviction relief on August 3, 2010, alleging that he received ineffective assistance of counsel in conjunction with his guilty plea and that his plea was constitutionally infirm. Specifically, the Petitioner contended that Trial Counsel (1) failed to develop and discuss with the Petitioner a reasonable trial defense, including filing appropriate pre-trial motions; (2) failed to inform the Petitioner of all of the consequences of a guilty plea; (3) failed to advise the Petitioner of his rights; (4) failed to render appropriate advice sufficient to allow the Petitioner to make an informed decision as to whether to enter a guilty plea; and (5) failed to communicate adequately with the Petitioner at crucial stages of the proceedings. A post-conviction hearing was held on March 28, 2012.

At the post-conviction hearing, the Petitioner testified that he was represented in the trial court by a female attorney but that he did not know her name. The Petitioner also stated at the hearing, "I am not a speller. I don't read and write good." He testified that Trial Counsel met with him approximately three times and that one of those three times was at his arraignment. He stated that his meeting with Trial Counsel at arraignment only lasted approximately fifteen to twenty minutes. The second time that Trial Counsel met with the Petitioner was at the jail, and he stated that this meeting did not last long either. During this meeting, the Petitioner and Trial Counsel discussed the Petitioner's case, including the possibility of going to trial or entering a guilty plea. According to the Petitioner, Trial Counsel told him that if he proceeded to trial, he "probably could get life in prison." The Petitioner did not testify about his third meeting with Trial Counsel. He only stated that it also was not a long meeting. The Petitioner testified that all he received from Trial Counsel in terms of discovery were two business cards with writing on the back of them.

Next, the Petitioner testified that, although he recalled pleading guilty in this case, he did not understand all of the consequences of entering the guilty plea. He stated that the day before he pleaded guilty he did not speak with anyone. The Petitioner also testified that Trial Counsel did not review his plea agreement with him. Specifically, he stated,

> I didn't go over that paper with nobody. When I come through that door there, the paper was there, and they showed me the paper, but I'm not a reader. I don't understand. I mean, wasn't nobody there to tell me this or that. I mean, I just come through the door.

The Petitioner remembered signing the plea agreement, but he stated that Trial Counsel only asked him to sign it and did not review the plea agreement with him. The Petitioner initially told Trial counsel that he would not sign the plea agreement, but then he "waited, and [he] just went on and signed the paper anyway." The Petitioner added that, had he understood the consequences of pleading guilty in this case, he would not have pleaded guilty and would have insisted on proceeding to trial instead.

The Petitioner indicated that he had only one limited conversation with Trial Counsel regarding a defense to the charges. Then, later in his testimony, the Petitioner claimed that he and Trial Counsel never discussed a defense. He acknowledged, however, that they did discuss the facts of his case. The Petitioner also stated that Trial Counsel discussed with him the potential sentences for each of his charges. He ultimately decided to plead guilty because he believed that if he went to trial he could face life in prison.

On cross-examination, the Petitioner stated that at the guilty plea hearing he "couldn't exactly hear [the trial judge] good." The State then asked the Petitioner whether he told the trial court the truth when it asked him, "Did you go over that [guilty plea] petition with your attorney[,]" and the Petitioner responded, "Yes, sir." The Petitioner stated that was true. Although at the guilty plea hearing the Petitioner told the trial court that he understood the contents of the plea agreement, at the post-conviction hearing he stated, "I didn't understand it, no." Accordingly, the State asked the Petitioner why he told the trial court that he understood the plea agreement. He responded that he is "not good at speaking to speakers."

Later, the State asked the Petitioner whether his defense at trial would have been self-defense. The Petitioner responded, "Sir, it was a little glass like this that cut her, one of them kind you can drop, and it just shattered everywhere. . . . The only thing I was trying to do, sir, was keep her from hurting me."

Trial Counsel testified that she had been licensed to practice law in California since 1996 and in Tennessee since 2001. Trial Counsel stated that, at the time of the guilty plea hearing and the post-conviction hearing, she was employed as a public defender with the Metropolitan Nashville-Davidson County Office of the Public Defender and had worked in that capacity for more than nine years. She testified that she did not represent the Petitioner at his preliminary hearing but that she was appointed to represented the Petitioner in criminal court. Trial Counsel stated that she obtained the materials from the Petitioner's preliminary hearing and that she incorporated those materials into her criminal court file for the Petitioner. She also obtained discovery in this case from the State. In the discovery, she received color photographs of the victim and the victim's injuries. Trial Counsel recalled that she made color copies of the photographs and gave them to the Petitioner so that he could have plenty of time to review them during the course of her representation.

Trial Counsel testified that the Petitioner was incarcerated during the entire course of her representation of him. She recalled meeting with the Petitioner a "number of times." She also stated that they communicated through the telephone and mail. Prior to the Petitioner's arraignment, she stated that she mailed him a letter informing him that he was indicted on additional charges. She also mailed him "a copy of [her] summary of what he was charged with[ and] what the law provided as possible punishment for those indicted charges." This summary was attached to the plea agreement and appears in the record on appeal. Because the Petitioner stated in his testimony that he could not read well, the State asked Trial Counsel whether she discussed this information with the Petitioner orally on one or more occasions. Trial Counsel stated that she did.

At the Petitioner's arraignment, Trial Counsel "took special time to meet with him and talk to him beforehand" about "the fact that there were some serious additional charges, beyond what he had originally been arrested on." Trial Counsel also discussed the potential sentences for each of the Petitioner's indicted charges with him at arraignment, although not in a lot of detail this time. However, during the subsequent discussions that Trial Counsel had with the Petitioner, she stated that they "spent a lot of time discussing that."

Trial Counsel believed that she had a "working knowledge of the facts and what the State's proof would be" in this case. Given this information, Trial Counsel engaged in plea negotiations with the State. She testified that the Petitioner had "some reluctance" and that "[h]e was back and forth about it." On the Petitioner's scheduled discussion date for plea negotiations in the trial court, Trial Counsel spent time with the Petitioner talking to him about the case. On this date, the prosecutor assigned to the Petitioner's case was not in court, but he left a note regarding the case with another prosecutor who was present. According to Trial Counsel, based on the second prosecutor's reading of the note, "they understood that

-5-

the total sentence length that would be offered to [the Petitioner] would be eleven years at thirty percent."

Trial counsel agreed that the Petitioner's version of the facts included the victim starting the fight. She further agreed that she discussed with the Petitioner that "in view of [the victim's] injuries and [the] 911 [call], that might be a hard sell[.]" She also discussed whether Ricky Butler, the third person that was present when the incident occurred, would be a good witness for the defense. According to Trial Counsel, the investigator from the Public Defender's Office attempted to find Butler so that Trial Counsel could talk to him about what transpired that night, but the investigator was unable to locate him. The Petitioner told Trial Counsel that Butler did not want to be involved in the case and that he left the state in order to avoid it.

Trial Counsel recalled that the day before the Petitioner pleaded guilty, she met with him at the Hill Detention Center where he was housed. The investigator from the Public Defender's office accompanied her to this meeting. Trial Counsel testified that she spent approximately an hour and a half with the Petitioner reviewing the options that the Petitioner had, including the risks of going to trial or pleading guilty. Trial Counsel also played for the Petitioner the 911 call, which was made after the incident in this case, and she discussed with the Petitioner how the tape would be played at trial and how it would fit into the circumstances of his case. Trial Counsel stated that they also continued the discussion about whether Butler would be a good witness for the defense when they listened to the 911 call because Butler was one of the people recorded on the call.

During the meeting that day, the Petitioner and Trial Counsel "had a good deal of discussions" about whether the Petitioner was willing to accept the State's offer and plead guilty. Trial Counsel stated that, by the end of the meeting she had with the Petitioner the day before he pleaded guilty, the Petitioner "said that he did want to accept the State's offer and did want to plead. And at that time, we understood that the plea offer was eleven years at thirty percent." That afternoon, Trial Counsel contacted the State to inform it that the Petitioner would be pleading guilty the following day so that the State could have the victim present if it wished.

The next morning, Trial Counsel met with the Petitioner at the courthouse. She spoke to the Petitioner "for a good length of time, again reviewing what the plea offer was and making sure that he did still indeed want to do that, and he did[.]" She noted that the Petitioner had a "particular issue about the label 'kidnapping'" but that the two of them had repeated discussions about the differences in the legal definition of kidnapping versus the Petitioner's understanding of a kidnapping. Trial Counsel then spoke with the prosecutor assigned to the Petitioner's case, and the prosecutor confirmed that "the actual offer was a ten-year thirty-percent offer." Trial Counsel told the Petitioner that "the State's offer was

-6-

better than what he had originally told [her] that he was willing to plead to." Thereafter, they "revised the plea petition paperwork to reflect that better offer." The plea then was entered later that afternoon. During the plea colloquy, Trial Counsel believed that the Petitioner was listening and paying attention to what transpired. She stated that nothing occurred during the plea colloquy that gave her any concern that the Petitioner did not know what he was doing. Although she noted that she did not think that the Petitioner was "particularly happy about it," she believed that he wanted to plead guilty instead of facing the risks of going to trial.

On cross-examination, Trial Counsel acknowledged that the Petitioner told her that he does not read and write very well. Trial Counsel said that, although she gave the Petitioner a copy of the discovery in this case for him to review, she also sat down with him and went through the contents of the discovery.

Trial Counsel testified that throughout her meetings with the Petitioner they had very "content-specific discussion[s]" regarding the facts of the case. According to her, the Petitioner "would actually engage in discussing the facts," including "disagree[ing] with some things that the State's position was taking." Trial Counsel testified that on several different occasions she and the Petitioner discussed the consequences of entering a plea and the risks of proceeding to trial. She believed that each time they "were having an engaged discussion," and she stated that the Petitioner also would ask questions during these discussions. Trial Counsel also discussed the applicable law with the Petitioner. She stated that he "would want to shift the conversation to talk about the facts, in order to argue about the facts," but she "would bring him back to talk about what the law said and to discuss the process if [they] had a trial."

Trial Counsel agreed that the Petitioner, throughout their discussions, maintained that no knife was involved in the incident. Trial Counsel denied that she ever used the terms "life imprisonment" when discussing the possible sentences for the Petitioner's charges, including his most serious charge, especially aggravated kidnapping, a class A felony. With regard to this charge, Trial Counsel stated that she discussed the full range of the sentence for a class A felony, the length that the sentence would be for his classification, and that he would have to serve that sentence at 100% if he were convicted. She believed that they probably discussed what impact the sentence would have on his life, taking into account his age, but that she never used the term "life imprisonment." Trial Counsel testified that she did not recall the Petitioner phrasing it that way to her during their discussions either.

The post-conviction court took the matter under advisement and issued its written ruling denying the Petitioner's petition for post-conviction relief on May 24, 2012. In denying relief, the post-conviction court made the following findings:

A close review of the record and testimony presented, reveals that [Trial C]ounsel met with the [Petitioner] and informed him of the nature of the charges against him, the likelihood of and range of punishment, and the nature and consequences of the plea agreement to the [P]etitioner.

Therefore, [the] Petitioner has failed to demonstrate by clear and convincing evidence ineffective assistance of counsel and that the plea was a violation of due process rights in violation of a constitutional right to render his conviction and sentence void or voidable under the Post Conviction Relief Act. The [post-conviction court] does not find the [P]etitioner's testimony to be credible.

The Petitioner timely appealed, arguing that Trial Counsel was deficient in his representation of the Petitioner and that his plea was not knowing, intelligent, or voluntary.

**Analysis**

*Standard of Review*

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

*Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel

at trial.[1]  Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases."  Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).  The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act.  See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In this case, the Petitioner asserts that Trial Counsel's performance was ineffective because Trial Counsel failed to provide the Petitioner with an adequate explanation of the State's evidence against the Petitioner; failed to adequately explain the applicable range of punishment; and failed to spend adequate time with the Petitioner to ensure his understanding of all aspects of the case against him, including the consequences of pleading guilty.  The Petitioner claims that he did not understand the range of punishment for his indicted charges if he proceeded to trial and that he mistakenly believed he would "be facing a life sentence" if convicted at trial.  The Petitioner also claims that Trial Counsel was ineffective in that she allowed the Petitioner to enter a guilty plea even though she understood the Petitioner's reading difficulties and his reluctance to enter a guilty plea.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs:  (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense.  See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).  The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel.  Goad, 938 S.W.2d at 370.  Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong.  Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'"  Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688).  Our Supreme Court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance.  It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence.

---

[1] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution.  See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

-9-

Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). In the context of a guilty plea, our analysis of this prong

focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Calvert v. State, 342 S.W.3d 477, 486 (Tenn. 2011).

Turning to the Petitioner's specific allegations, we hold that the Petitioner failed to establish deficient representation on the part of Trial Counsel. Initially, we note that at the guilty plea hearing the Petitioner stated that he was satisfied with Trial Counsel's representation. He also stated that the range of punishment for each of the indicted charges was explained to him, that he understood the charges upon which he was indicted, and that he understood the convictions for which he was pleading guilty, as well as their respective sentences.

-10-

Trial Counsel testified that she met with the Petitioner numerous times. During her meetings with the Petitioner, Trial Counsel informed him of the nature of the charges against him and the range of punishment for each of the indicted offenses. She also mailed him "a copy of [her] summary of what he was charged with[ and] what the law provided as possible punishment for those indicted charges." Trial Counsel also discussed in detail the facts of the case and the applicable law. Trial Counsel testified that she discussed with the Petitioner on several occasions the proposed plea offer of eleven years at 30% and the consequences of entering a guilty plea in this case versus the risks of proceeding to trial. Trial Counsel testified that she never told the Petitioner that he could face a sentence of life imprisonment if he proceeded to trial and that the Petitioner never used those terms in his discussions with her. Although Trial Counsel acknowledged that the Petitioner was not "particularly happy" about pleading guilty, she believed that the Petitioner wanted to plead guilty instead of facing the risks of going to trial. Although Trial Counsel acknowledged that the Petitioner told her he could not read well, she stated that she went over the information with the Petitioner that she mailed to him, including the discovery in person, and that she reviewed the plea agreement with him as well. Trial Counsel also met with the Petitioner for approximately one and a half hours the day before he pleaded guilty to discuss in further detail the proposed plea and his case. The post-conviction court chose to credit Trial Counsel's testimony over the testimony of the Petitioner, holding that it "does not find the [P]etitioner's testimony to be credible." We defer to the post-conviction court on issues of credibility. See Momon, 18 S.W.3d at 156.

Lastly, it is irrelevant that on the day of the guilty plea hearing, after Trial Counsel spoke to the State, she realized that the offer was actually a ten-year 30% offer. The evidence established that the Petitioner already had decided that he was going to plead guilty to an eleven-year 30% offer. Moreover, after learning that the State's final offer was actually a ten-year 30% offer, Trial Counsel informed the Petitioner of the offer and that it "was better" than the proposal they previously had discussed. Trial Counsel and the Petitioner then revised the plea agreement to reflect the better offer.

For these reasons, the Petitioner has failed to establish by clear and convincing evidence that Trial Counsel was deficient in any manner. Thus, we need not address the prejudice prong. See Goad, 938 S.W.2d at 370. Accordingly, the Petitioner is not entitled to post-conviction relief on the grounds of ineffective assistance of counsel.

*Validity of Guilty Plea*

The Petitioner also asserts that his pleas were not entered knowingly, voluntarily, and intelligently. In his appellate brief, the Petitioner claims that he did not understand the consequences of entering a guilty plea; that he mistakenly believed that he would be facing

a life sentence if he proceeded to trial; and that he "was pressured into entering this plea agreement because of [T]rial [C]ounsel's failures."[2] We agree with the post-conviction court that the Petitioner has failed to establish by clear and convincing evidence that his plea was not entered knowingly, voluntarily, and intelligently.

To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. See Boykin v. Alabama, 395 U.S. 238, 242-44 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977) superseded on other grounds by Tenn. R. of Crim. P. 37(b) and Tenn. R. of App. P. 3(b). A plea meets constitutional muster when the defendant understands both what the plea connotes and its consequences, Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Boykin, 395 U.S. at 244), and makes a voluntary and intelligent choice from the alternative courses of action available to plead guilty. Jaco v. State, 120 S.W.3d 828, 831 (Tenn. 2003) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). In Mackey, 553 S.W.2d at 341, our supreme court set forth the procedure that a trial court should follow when accepting a guilty plea in order to ensure that a defendant's plea is knowing, voluntary, and intelligent. See also Tenn. R. Crim. P. 11(b). A trial court must "substantially" comply with this procedure. State v. Newsome, 778 S.W.2d 34, 38 (Tenn. 1989).

As set forth above, a petitioner in a post-conviction proceeding must establish his right to relief by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f); Momon, 18 S.W.3d at 156. We have reviewed the transcript of the guilty plea hearing and conclude that the plea was constitutionally sound. At the guilty plea hearing, the Petitioner acknowledged that he understood the following: the indicted charges and the range of punishment for those charges; the convictions for which he was pleading guilty and their respective sentences; his right to a jury trial, at which he could present a defense and cross-examine the State's witnesses; his right to have an attorney represent him at trial; and his right to an appeal if convicted at trial. The Petitioner also stated that he was entering his plea freely and voluntarily and that no one was forcing him to enter into his plea. Moreover, at the post-conviction hearing Trial Counsel testified that she went over the consequences of pleading guilty with the Petitioner several times. She also never told the Petitioner that he could face a sentence of life imprisonment if he proceeded to trial, and the Petitioner never used those terms in his discussions with her. Thus, the Petitioner has failed to establish that he did not knowingly, intelligently, and voluntarily enter into his plea agreement. Accordingly, the Petitioner is not entitled to post-conviction relief on this basis.

---

[2] The alleged "failures" that the Petitioner references also includes his complaints that Trial Counsel rendered ineffective assistance of counsel. Because we previously found that the Petitioner failed to establish that Trial Counsel was deficient in any manner, we need not address those alleged "failures" already ruled upon by this Court.

**CONCLUSION**

For the foregoing reasons, the Petitioner has failed to establish that he is entitled to post-conviction relief. Therefore, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE